1

2

THE HONORABLE THOMAS S. ZILLY

3

4

5

6

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

| | |
|---|---|
| 8  UNITED STATES OF AMERICA, | Case No. 16-00142 TSZ |
| 9          Plaintiff | |
| 10         v. | SUPPLEMENT TO MOTION FOR NEW TRIAL AND MEMORANDUM IN SUPPORT THEREOF |
| 11 | |
| 12 | |
| 13  WILLIAM ALI, | NOTE FOR MOTION: May 12, 2017 |
| 14         Defendant. | |
| 15 | |
| 16 | REQUEST FOR ORAL ARGUMENT |

17

18

19

**Motion for A New Trial**

20

This memorandum is submitted to supplement the pro se motion for a new trial filed by

21

Mr. Ali.  This motion for a new trial is brought pursuant to Rule 33 of the Federal Rules of

22

Criminal Procedure. A jury verdict of guilty was returned on December 14, 2016. [Dkt. 79]. Rule

23

33 provides that a defendant may move for a new trial within 14 days of the jury verdict.  Mr. Ali

24

filed a letter with the Court which the Court has considered as a timely motion for new trial.

25

26

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 1

CAMIEL & CHANEY, P.S.
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

[Dkt. 79, 81] (Ex. 7) The Court directed that any supplemental memorandum in support of defendant's motion be filed by April 21, 2017. [Dkt. 89]

This motion is brought under F.R.Cr.P. Rule 33 of the Federal Rules of Criminal Procedure rather than Rule 29 because the standard of review and scope of review are different. The scope of review is different because while Rule 29 directs the court to consider the state of the evidence at the time the motion was made, Rule 33 allows the court to vacate any judgment and grant a new trial "if the interest of justice so requires."

There is substantial authority that the "interest of justice" standard under Rule 33 allows the grant of a new trial where substantial legal error has occurred. See *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (stating that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial" (quoting Wright, Federal Practice & Procedure § 556 (3d ed. 2004)); A violation of Mr. Ali's Sixth Amendment right to effective assistance of counsel clearly meets this standard. See *United States v. Bass,* 460 F.3d 830, 838 (6th Cir. 2006) (acknowledging that defendant may "s[eek] a new trial on the ground that his counsel allegedly rendered ineffective assistance"); accord *United States v. Russell*, 221 F.3d 615, 619 (4th Cir. 2000); *United States v. Mojica*, 984 F. 2d 1426, 1452 (7th Cir. 1993); *United States v. Sands*, 968 F.2d 1058, 1066 (10th Cir. 1992); *United States v. Brown*, 476 F.2d 933, 935 (D.C. Cir. 1973).

## BASIS FOR MOTION FOR NEW TRIAL

Mr. Ali has alleged he received ineffective assistance of counsel in several respects. He has alleged that because he had limited and inadequate communication with his lawyer, he did not fully understand the law underlying the charges against him, the strength of the government's case, and the available defenses. He has alleged that he did not receive, or have an opportunity

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 2

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA 98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

to review, all of the discovery and therefore could not adequately prepare for trial or consider the plea offer made by the government.  He has alleged that he was not told of the government's plea offer in a timely manner and did not have adequate time to discuss the offer with his lawyer prior to the offer being withdrawn.  He asserts that at the time his lawyer told him about the plea offer, his lawyer had not reviewed the most critical of the discovery materials and thus could not provide meaningful advice. He also was not told of the plea offer deadline.  Finally, his lawyer rejected the plea offer and allowed it to be withdrawn without consulting with Mr. Ali. (Ex. 1- Declaration by William Ali)

**Chronology of Events:**

4/11: Mr. Ali is arrested in Seattle.

4/12: Mr. Ali makes first appearance on the Complaint and is ordered detained.  Federal Public Defender is appointed.

4/20: First Production of Discovery by Government to Assistant Federal Public Defender Nancy Tenney. (Ex. 2)

4/27:  FPD Nancy Tenney sends Mr. Ali a CD with "selected" emails produced by the government.

5/11:  Mr. Ali is indicted.

5/19:  Arraignment on Indictment.

5/25: AUSA Thomas Woods (TW) sends Assistant Federal Public Defender Nancy Tenney a proposed plea agreement.  (Plead to Conspiracy under 18 U.S.C. 371. No cap on government recommendation).

5/27: AUSA TW sends out the second production of discovery 1-489 and emails. (Ex. 2- discovery production log)

6/6: FPD Nancy Tenney sends Mr. Ali an encrypted disc contained the discovery. (Mr. Ali was never able to open this disc because it was encrypted or password protected.)

6/24: Mr. Crowley was retained by Mr. Ali's family.

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 3

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

7/12: Nancy Tenney's last visit at FDC with Mr. Ali after learning that Mr. Ali has retained counsel.

7/19:  Mr. Crowley made his first visit to Mr. Ali at the FDC to introduce himself. (not documented in FDC visiting records but is documented in an Ali email to his wife)

8/1:  Mr. Crowley visited Mr. Ali at the FDC. (Not documented in FDC visiting records but is documented in an Ali email to his wife)

8/12: In an email to the court's clerk, Nancy Tenney requested a status hearing to determine the status of counsel because Mr. Crowley had not yet filed a notice of appearance.

8/18: Status hearing held. Mr. Crowley appears for Mr. Ali for the first time.

8/29: Mr. Crowley visited with Mr. Ali for purpose of signing speedy trial waiver. (Not documented in FDC visiting records but is documented in Ali email to his wife)

9/6: Motion to continue trial filed by Mr. Crowley. [Dkt 43]

9/8: Order continuing trial to December 12. [Dkt 46]

9/19: Email from AUSA TW to John Crowley (JC) conveying a new plea offer with 24-month cap on government sentencing recommendation.[1]

10/23: Email from AUSA TW to JC: "I've left you a few messages about this case.  What is the status?  Note that we are before a Court that is highly unlikely to grant a third continuance."

10/26: Email from AUSA TW to JC: "John, I have sent you multiple emails, and tried you on the telephone, asking about the status of this case. As a head's up, I plan to ask for a status/pretrial conference in the next day or two."

10/26: Email from AUSA TW to JC: "John, I understand you will be calling me back later in the afternoon-My plea offer is the following….On the condition I hear from you today, I will keep the offer open until a mutually-agreed date when you can meet and sit down with your client, but no later than the close of business of November 2."

10/27: Email from AUSA TW to JC: "John, I didn't hear from you-Can you confirm that you will get back to me one way or the other by next Wednesday."

---

[1] A copy of the referenced emails between AUSA Woods and Mr. Crowley are contained in Ex. 11)

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 4

10/31: Email from AUSA TW to JC: "John, you have not responded to any of my messages, or called me, as you said you would. -Please confirm you will have spoken to your client and gotten back to me one way or the other."

11/2: Email from AUSA TW to JC: "John, I am writing to confirm that *the plea offer has expired.* You did not reply or respond to my many attempts to contact you. I will ask the Court at the November 16 hearing to conduct an *ex parte* inquiry to ensure that the plea offer was conveyed to Mr. Ali on a timely basis, that you reviewed the evidence with him (including his confession and the numerous incriminating emails) and that he has nonetheless decided to proceed to trial." (emphasis added)

11/10: Meeting between AUSA TW and John Crowley to review the plea offer.

11/11: Email from AUSA TW to JC: John, Per our conversation, attached are the three similar cases that were prosecuted in this district-all pleaded guilty and received between 18 and 24 months. Needless to say, Mr. Ali would almost certainly receive a higher sentence were he to proceed to trial."

11/14: Email from AUSA TW to JC: "John, I didn't hear from you over the weekend. As I indicated last week, the offer expires today unless I hear from you otherwise. He also will lose the third point."

11/14: Email from JC to AUSA TW: "Tom, may you extend the offer until Wednesday morning?

11/14: Email from AUSA TW to JC: "John, okay on both, but I can't go beyond Wednesday. If he rejects the offer, can you discuss with him whether he will stipulate….

11/15: Email from AUSA Rebecca Cohen to JC: "John, ….am writing to check in with you about the government's plea offer. To that end, I have attached a plea agreement that encompasses the terms of the plea that was previously extended to Mr. Ali by Tom. Please review the agreement with Mr. Ali when you see him tomorrow. As I believe you know, the offer will expire at the status conference tomorrow afternoon."

11/15: According to FDC records, Mr. Crowley visited with Mr. Ali. (2:35pm to 3:25pm)

11/16: Email from AUSA TW to JC: (quoting an email from Mr. Ali to Chinese buyer)

11/16: Telephone message from JC to AUSA TW stating that Mr. Ali had rejected the plea offer.

11/16: Status hearing held. At the status hearing Mr. Crowley tells the court "there's still a possibility of a settlement. I spoke to Mr. Ali about this yesterday. Mr. Woods and I spoke about it this morning. He provided some emails to me. And I will speak to Mr. Ali about that." According to AUSA Woods, "At Mr. Crowley's request, I printed a few of the most damning emails and handed him copies at the hearing. I did not retain a set for myself or record the specific emails that I provided him. All of the emails were from the production that was

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

previously produced." Mr. Woods also provided Mr. Crowley with Ninth Circuit jury instructions on violation of the Arms Export Control Act.

11/17: Email from Mr. Ali to his wife describing his consideration of the plea offer and expressing concern that Mr. Crowley had not reviewed the discovery and was not prepared. (Documented in Ali email to his wife contained in Ex. 8)

11/21: Email from AUSA TW to JC: "John, I tried you, but your voicemail was full.  Did you see Ali over the weekend?  I can't keep the offer open realistically much longer.  If I don't hear from you by the end of the day tomorrow, it will expire.  His third point for acceptance also goes away then too." (FDC records to not show any visits by Mr. Crowley with Mr. Ali after 11/15/16.)

11/21: Defendant sends letter dated 11/21 to court about not receiving discovery. A docket entry appears on November 30. (Ex. 6)

11/22: Telephone conference between AUSA TW and John Crowley.  According to AUSA TW notes "Mr. Crowley said that Mr. Ali planned to procced to trial. AUSA *Woods asked Mr. Crowley whether he had gone to see Mr. Ali, but Mr. Crowley did not directly respond to that question.*  AUSA Woods told Mr. Crowley that the plea offer was withdrawn, but that he should contact him if Mr. Ali had an interest in pleading guilty." (Emphasis added). (Ex. 4)

11/30: Email from AUSA TW to JC:  "????" (in reference to docket entry showing letter from Mr. Ali to the Court re not having received discovery)( Mr. Ali's letter to the court indicates "I had requested all my emails, however, I was provided with an encrypted disc which I could not view at all."  He also wrote that "I have also highlighted this issue with my attorney however, I have not received any feedback, hence my trying to reach out to you, Sir.")

12/2:  Email from JM (Crowley's paralegal) to AUSA TW: I was going through Mr. Ali's discovery and I cannot seem to locate bates pages 1-182 Could you possibly have this emailed to me. (Bates pages 1-182 includes HSI reports numbered 1-15 and emails from Mr. Ali and the undercover officer between 7/14/14 and 6/24/15.

12/2: Voice message to AUSA TW from paralegal JM stating the same re needing discovery pages 1-182.

12/2: Email from AUSA TW to JM (paralegal):  I am copying Salee Porter, my assistant, who will send to you.  Note that we provided initial discovery in this case that was then "superseded" by our complete production on May 27-with the filed labeled "raw files."

12/?: Approximately one week to ten days before the trial, the Federal Public Defender's Office received a call from Mr. Crowley requesting the discovery produced by the government. Mr. Crowley had not previously made any request for discovery from the FPD.

12/4, 12/5, 12,9 Mr. Crowley visits Mr. Ali at FDC (FDC records do not document these visits.)

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 6

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

12/12: Trial begins

12/14: Jury Verdict

12/29:  Mr. Ali send post-trial letter to the Court. (Ex. 7)

### Federal Detention Center Visits

The Federal Detention Center produced attorney visiting records in response to a subpoena requested by government counsel.  Those records document only one visit by Mr. Crowley on November 15, 2016 to Mr. Ali prior to trial which began on December 12. (Ex. 5) However, Mr. Ali does recall visits upon first retaining Mr. Crowley in late July and in August, one visit on the day before the November 16 status hearing as is documented by the FDC records, and three additional visits immediately before the trial in early December.  It is not clear why all of those visits do not appear on the FDC logs.[2]  The one visit confirmed by FDC records is on November 15, 2016, one day before the status hearing. No visits are recorded by the FDC before that date, and Mr. Ali recalls no visits between his signing of the speedy trial waiver on August 29 and the November 15 visit- a period of approximately two and one-half months.   Mr. Ali recalls three additional visits that also do not appear in the FDC logs during the week before the trial on December 4, 9, and 11th. Those visits occurred after the plea offer had expired on November 22. During those early December visits, Mr. Crowley showed Mr. Ali emails received

---

[2] When a lawyer visits a client at the FDC the lawyer must fill out a visiting form, sign a log book at the reception desk indicating the attorney name, client's name, and client's registration number as well as the date and time entering and leaving the facility.  An officer in the visiting room keeps another separate computerized log that records the attorney name, client name and registration number and the time the client enters and leaves the visiting area.

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 7

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

in discovery and they discussed the trial. Mr. Crowley left the e-mails with Mr. Ali but retrieved them on his next visit.

The FDC logs document that Assistant Federal Public Defender, Ms. Tenney visited Mr. Ali seven times between April 20 and July 12, 2016 after which she was notified that Mr. Crowley was retained.

Mr. Crowley was interviewed by current counsel and the government counsel.  He indicates that he visited with Mr. Ali on November 12, however, neither the FDC records nor Mr. Ali's emails to his wife confirm this.  Mr. Ali did email his wife after the November 15 FDC documented visit.  Mr. Crowley also claimed to have visited Mr. Ali on November 19, (3 days following the status hearing), however, Mr. Ali emailed his wife on November 19 in the evening indicating he had not seen Mr. Crowley, and again on November 20 indicating no visit from Mr. Crowley. Mr. Ali attempted to email Mr. Crowley on November 21 about getting discovery.  Mr. Ali also wrote to this court on November 21 about not receiving discovery. Ex. 8 (emails from Mr. Ali to his wife about visits with Mr. Crowley)

### DISCOVERY

Ms. Tenney's records show that her office sent Mr. Ali two CD's containing the emails and reports.  One of the CD's was encrypted and Mr. Ali was unable to open it. The other contained some, but not all, of the emails the government produced in discovery.  During a visit, she played Mr. Ali the video of his post-arrest statement and believes she also played the restaurant meeting at the hotel on the night of Mr. Ali's arrest.  Mr. Ali recalls viewing the post-arrest video with Ms. Tenney, but not the video from the restaurant.  Mr. Ali expressed concern to Ms. Tenney that there should be more post-arrest video because he recalled having a

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 8

discussion with the arresting agents preliminary to the video recording he was shown.  (The government has represented that there was not additional video recording.)

Mr. Ali never received any discovery from Mr. Crowley or his office until one week before trial when Mr. Crowley left a package of emails for Mr. Ali to review, but Mr. Crowley retrieved those emails a few days later.   Mr. Ali never received any of the audio recordings which included the phone calls with the undercover agent and the audio/video of the meeting with the undercover agent in the hotel before Mr. Ali was arrested. He also never received a copy of his post arrest interview recording, although he did view it one time with Mr. Tenney.  Ms. Tenney  recalls reviewing both the post-arrest statement recording and the hotel restaurant meeting recording during a visit with Mr. Ali.  She has no memory of having reviewed the audio calls between Mr. Ali and the undercover agent with Mr. Ali or providing him with a copy of those materials.

Mr. Ali made numerous requests to Mr. Ali to provide him with discovery.  Ex. 8.  He tried emailing Mr. Crowley and calling his office.[3] Mr. Ali was told by Mr. Crowley's paralegal that they could not send him the discovery because it was "sensitive" material that could not be provided, suggesting the existence of a protective order.  However, no such order was ever entered that prevented the sending of discovery to Mr. Ali. (Ex. 10)

Mr. Crowley, when asked about when, how, and from whom he received discovery was unable to provide a clear answer. He suggested he received discovery at some point, from

---

[3]He sent emails to Mr. Crowely on November 16 about not receiving the audio files, on November 17 "hoping to get full discovery", additional emails about getting discovery on November 19 and 21, and called and spoke to a paralegal on December 1. On December 6, he emailed "I have not received any audio discoveries [sic]to date and we're due for trial next Monday." (Ex. 8)

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 9

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

someone, before the status hearing and reviewed it with Mr. Ali.  At one point, he suggested he reviewed he government trial exhibits with Mr. Ali before Mr. Ali rejected the plea offer and before the status hearing, however, those trial exhibits were not sent to Mr. Crowley until shortly before the trial. In addition, neither the government nor Ms. Tenney provided Mr. Crowley with *any* discovery before then.  In fact, Ms. Tenney's office did not provide Mr. Crowley with any discovery until the week before trial, at his request,  and the government did not provide any discovery until Mr. Crowley was handed a few of the emails at the status hearing and then after Mr. Crowley's December 2, 2016 request. In addition, Mr. Crowley indicated he never brought a computer into the FDC when he visited Mr. Ali, and never reviewed with him the post arrest or hotel video/audio recordings or the recorded calls with the undercover agent.

## ARGUMENT

A review of the plea offer communications from government counsel to Mr. Crowley, Mr. Ali's letters to the Court dated November 21 and on December 29, 2016, Mr. Crowley's request for discovery from the government on December 2, the request for discovery to the Federal Public Defender's office approximately one week before the start of the trial, the FDC visiting logs and Mr. Ali's recollection of Mr. Crowley's visits lead to the following conclusions. First, the plea offer that was conveyed from AUSA Woods to Mr. Crowley on September 19, 2016, was not communicated at all to Mr. Ali until the day before the status hearing of November 16, 2016. In fact, that plea offer had expired, according the Mr. Woods email of November 2, but was apparently revived.   It appears that AUSA Woods became so concerned about whether the plea offer was conveyed to Mr. Ali, that he sent Mr. Crowley the email dated November 2, 2016 telling Mr. Crowley he would be asking the Court to conduct an *ex parte* hearing to make sure the offer was communicated. In a phone conversation of November 22,

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 10

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

2016 between AUSA Woods and Mr. Crowley, Mr. Crowley did not "directly respond to the question" of whether he had visited with Mr. Ali after the November 16 status conference to discuss the plea offer. Mr. Crowley had told both Mr. Woods and Mr. Ali that he would do so, but he did not. Mr. Crowley told Mr. Woods on November 22 that Mr. Ali rejected the plea offer.[4]

Second, Mr. Crowley had not reviewed critical discovery when he discussed the plea offer with Mr. Ali on November 15 at the FDC or November 16 in the courtroom at the status hearing. Mr. Woods indicates that he printed out and handed a few of the "most damning" emails to Mr. Crowley at the November 16th status hearing. During the status hearing Mr. Crowley told the court that he and Mr. Woods spoke that morning and Mr. Woods provided "some e-mails to me." On that same date, Mr. Woods emailed Mr. Crowley one additional email from Mr. Ali to the Chinese buyer that referenced risking "possible jail time." These emails were not new discovery. They had been produced as early as May 27th and provided to Nancy Tenney.

There is no evidence that Mr. Crowley met with *or talked with* Mr. Ali after the status hearing of November 16, and before November 22 when Mr. Crowley told Mr. Woods that Mr. Ali rejected the offer and the plea offer was withdrawn. Mr. Ali indicates he did not see or talk with Mr. Crowley after the November 16 status hearing until December 4.

─────────────────────────

[4] Mr. Crowley stated in his interview that he had visited with Mr. Ali on November 19. The FDC records do not reflect this visit. Moreover, Mr. Ali's emails to his wife during that week reflect that he did not visit. Mr. Ali's email of November 19 at 4:51pm in part states: "John told me in court that he will be coming to see me this week …" On November 20 he emailed his wife: "Nope, John said he would come see me this week. Just another wait and see, I just hope he is being honest this time and is really working on my case." (Ex. 8)

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 11

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

Moreover, at the time that Mr. Crowley met with Mr. Ali on November 15 at the FDC and first told him of the new plea offer, (which the government had sent to Mr. Crowley on September 19th) Mr. Crowley did not have, and thus could not have reviewed, significant portions of the discovery including many of the most critical emails. As of November 15, 2016, Mr. Crowley had never requested or received discovery from the government or from the Federal Public Defender's Office. This conclusion is based on Mr. Crowley's requests for discovery from the government on December 2, and from the Federal Defender one week before the trial.

Assistant Federal Public Defender Nancy Tenney indicates that she had no substantive discussions about the case with Mr. Crowley *at any time*. After Mr. Crowley was retained, she contacted his office several times to urge him to file a notice of appearance but never actually spoke to him. Ultimately, she requested that a status conference be set in order to determine the status of representation. She only spoke with Mr. Crowley's paralegal or left voice messages. Thereafter a discovery package was prepared for Mr. Crowley by the Federal Defender's Office, however, Mr. Crowley never contacted FPD about obtaining the discovery until approximately one week before the trial when the FPD package of discovery materials was either sent to Mr. Crowley or his office picked up the package.

**MR. ALI WAS OPEN TO A PLEA OFFER AFTER HE HAD AN OPPORTUNITY TO REVIEW THE DISCOVERY AND DISCUSS IT WITH HIS LAWYER**

Prior to the trial, Mr. Ali sent emails to family members which shed some light on Mr. Ali's openness to considering a plea offer. In an email dated May 19, 2016 he wrote:

> Anyway, if I am still here, then perhaps a week or two later Nancy and I will go through my emails so I may take her through with what I was seeing, hopefully I can interpret it all for her after all it has been a year. After that then she will decide if we have a defensive case or not. Also in this time will be open opportunity for plea bargain, that is we approach prosecution for a guilty plea and he tell us what sort of punishment I should take. (Ex. 9)

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 12

In another message to family he wrote: "After I have explained all then she will decide if we have a defensive case.  But I will ask her what is the most expeditious way to get me home because even if I have to plead guilty and be banned from the US for life then I'll take it." (Ex. 9) These emails suggest that Mr. Ali wanted to review the government's evidence with a lawyer and then consider advice about whether to plead guilty. It appears he never got the chance to do so.

Finally, on November 16, on the evening after the status conference, Mr. Ali wrote to his wife explaining the new plea offer to his wife.  He says nothing about having rejected the offer as Mr. Crowley had told the government. (Ex. 8) In that same email Mr. Ali also expresses great concern that his lawyer was not familiar with his case.

> But his reaction in court today for me was clearly evident that he hadn't gone through me [sic] email evidence etc. nor has fully understood my case & now I am worried given that we are only 4 weeks away from trial and he is so unfamiliar with my case.  I just don't have the confidence in him to make a decent effort to put my case together.

## THE TRIAL REVEALED THAT MR. ALI AND HIS LAWYER HAD NOT SPENT MUCH TIME TOGETHER REVIEWING THE CASE

A review of the trial transcript demonstrates that Mr. Ali and his lawyer were not "on the same page" in terms of the defense to be presented at trial.  Mr. Crowley argued an entrapment defense suggesting that the undercover agent induced Mr. Ali to commit the crime and induced him to come to the United States to pick up the parts.  Mr. Ali did not testify that he was pressured or induced to come to the United States to receive the parts, but voluntarily came to the United States expecting to obtain fake parts which he would knowingly deliver to the Chinese buyer as vengeance for being misled about the nature of the parts.  Mr. Ali testified that he believed he was being "scammed" by the undercover agent who was going to sell him "fake" parts and not authentic parts.

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 13

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

The government lawyers noted in closing argument "the defendant has put forth two different stories to explain what happened in this case… the first story the defendant has articulated is that he was entrapped…." TR III-20 "The other story you heard defendant explain is that he wasn't willfully violating the export laws when he came to the U.S. to pick up the parts, because he thought the parts were fake." TR III-25 In the rebuttal argument the government noted: "And this notion of entrapment, that's not the story he told on the stand."  TR III- 73

In the interview with  Mr. Crowley he told  counsel that he was surprised by Mr. Ali's trial testimony and was not expecting Mr. Ali to testify as he did.  However, Mr. Ali's trial testimony was consistent with what he had told Ms. Tenney.  Mr. Crowley indicates that he "rehearsed" with Mr. Ali for his direct testimony.  Mr. Ali indicates that there was never any meaningful discussion about his testimony. (Ex. 1)

**MR. ALI MAINTAINS THAT HAD HE UNDERSTOOD THE LAW AND THE GOVERNMENT'S EVIDENCE, HE WOULD HAVE AGREED TO THE GOVERNMENT'S PLEA OFFER**

William Ali had no prior experience in the criminal justice system either in his birth country of Fiji, his most recent residence in New Zealand, or in the United States.  He had never been arrested and never set foot in a courtroom.  He had no understanding of legal concepts such as criminal conspiracy or criminal attempt.  He is a trained aircraft engineer but has never studied the law.  He has no family in the United States.  He did not understand the practice of having a government paid lawyer represent him. His family went into debt to hire a lawyer they found through the internet to represent him because they believed it was a necessary step.

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 14

Mr. Ali maintains that he did not understand the law as to either conspiracy or attempt and how those legal concepts would apply to the facts in this case.  As became clear at trial, Mr. Ali did not understand that he could be convicted of Conspiracy to violate the Arms Export Act or an Attempt to do so regardless of whether he knew that the parts were used for military purposes and regardless of whether he personally removed the parts from the United States or someone else did on his behalf.  He clearly did not understand that he could be convicted even if he never set foot in the United States. He did not understand what a "substantial step" was or what an "overt act" in a Conspiracy was.  He did not understand that the government was not required to wait to see what he did with the parts before he could be arrested or charged.  Thus, he went to trial believing he had a legitimate defense when he had none.

Mr. Ali's emails to family show that he was open to considering a plea offer if he was told, after reviewing all the facts and government evidence that he did not have a "defensive case." His emails also make clear that he was desperately trying to get his lawyer to communicate with him and assure him he had received and reviewed all the discovery and to get his lawyer to review the discovery with him.

**EFFECTIVE ASSISTANCE OF COUNSEL AND THE PLEA PROCESS**

In *Missouri v. Frye,* __ U.S. __, 132 S.Ct. 1399 (2012) the Court held that the Sixth Amendment right to effective assistance of counsel extends to consideration of plea offers. In *Padilla v Kentucky*, 559 U.S. __, the Supreme Court held that "the negotiation of a plea bargain is a critical" stage for ineffective-assistance purposes.  The Court noted that as 97 % of federal convictions and 94% of state convictions are the result of guilty pleas, defense counsel must meet responsibilities in the plea bargain process to render the adequate assistance of counsel that the Sixth Amendment requires.

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

In *Lafler v. Cooper,* __ U.S. ___, 132 S. Ct. 1376, 1387 (March 21, 2012) the court held that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."

The two-part test for demonstrating ineffective assistance of counsel, set forth in *Strickland v. Washington*, 466 U.S. 668, 688, (1984), is also " applicable to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57,̦ (1985).  First, was counsel's performance reasonable considering all the circumstances.  Second, if counsel's performance were deficient, the court must assess prejudice. Prejudice " focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "

The Supreme Court in *Missouri v. Frye* described the test for prejudice as follows:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, . . . [and] that the end result of the criminal process would have been more favorable . . .Id at 1409

The 24-month cap recommendation plea offer was first communicated to Mr. Crowley on September 19, 2016 but not communicated at all to Mr. Ali until one day before the status hearing of November 16, 2016. In fact, the plea offer had previously expired but was revived. The plea offer deadline was then extended and lapsed after Mr. Crowley represented on

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 16

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

November 22, that Mr. Ali had rejected the plea offer even though Mr. Crowley did not meet or speak with Mr. Ali between the status conference of November 16 and November 22. [5]

Mr. Ali recalls that Mr. Crowley mentioned but did not explain the plea offer when they met on November 15.  Mr. Ali first heard the details of the offer (the 24-month cap) at the status hearing held on November 16.  Mr. Ali told Mr. Crowley he could not yet consider the plea offer because he had not yet had a chance to review the discovery with Mr. Crowley.

Mr. Ali wrote to this court five days after the status hearing, in a letter dated November 21, 2016, indicating he was unable to prepare for trial because he had not received discovery. (Ex. 6) He indicated in this letter that he was writing the court because "I have also highlighted this issue with my attorney, however, have not received any feedback hence my trying to reach out to you, sir." He wrote that he had received an encrypted disc from his former counsel that he was not able to view at the FDC.  The November 21, 2016 letter was written by Mr. Ali to the court because Mr. Crowley had not provided Mr. Ali  any discovery.

Following the November 16, 2016 status hearing at which Mr. Crowley was provided with a number of "the most damning emails," Mr. Crowley had told AUSA Woods that he would meet with Mr. Ali to discuss the plea offer.  According to AUSA Woods, on November 22, 2016 there was a call between Mr. Woods and Mr. Crowley during which Mr. Crowley indicted that Mr. Ali planned to proceed to trial.  (Ex. 4) Mr. Woods recalls he asked Mr. Crowley if he had met with Mr. Ali to discuss the offer. Mr. Woods wrote in a memorandum about this call that he "asked Mr. Crowley whether he had gone to see Mr. Ali, but Mr. Crowley did not directly

––––––––––––––––––––––––––

[5] An earlier plea offer had been made when Mr. Ali was represented by Ms. Tenney.  That plea offer was to plead as charged with no cap on the government recommendation, whereas the plea offer conveyed on September 19 required to the government to recommend no more than 24 months of prison.

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

respond to that question."  During this same call, Mr. Woods told Mr. Crowley that the plea offer was withdrawn.  Mr. Ali indicates that Mr. Crowley did not come to see him after the November 16 status hearing nor did they talk by telephone. Mr. Ali had not been told of the plea deadline and had not told Mr. Crowley to reject the plea offer, and was not told that the plea offer was withdrawn as of November 22. Mr. Ali did not see Mr. Crowley again or talk to him again until December 4, 2016.

The duty announced in *Missouri v. Frye, Lafler v. Cooper,* and *Padilla v. Kentucky* requires, among other things that a lawyer advise his client of a plea offer in a timely fashion. The plea offer at issue herein was conveyed to Mr. Crowley on September 19, but not conveyed to Mr. Ali until November 15.

The duty of a lawyer in the plea negotiation process cannot be fulfilled by a lawyer who has not had the opportunity to review for himself, and review with his client, the discovery that makes up the case against his client before advising the client about the efficacy of the plea offer.

As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye,* 132 S.Ct. at 1408. See also *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) (a trial counsel's "failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). Accordingly, when a defense attorney allows a plea offer to expire without advising the defendant about the offer or allowing him to consider it, "defense counsel did not render the effective assistance the Constitution requires." *Frye*, 132 S.Ct. at 1408. "It is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 18

"A defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Turner v. Calderon,* 281 F.3d 851, 880 (9th Cir. 2002), U*nited States v. Day*, 969 F.2d 39, 43 (3d. Cir. 1992) Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision. Id. at 881. "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." *Blaylock,* 20 F.3d at 1465 (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981)).

It is anticipated that the government will argue that because Mr. Ali had a very competent and effective lawyer in Ms. Tenney, his motion should be denied. There is no dispute that Ms. Tenney went through much discovery with Mr. Ali, explained the first plea offer to him, and visited with him frequently.  She was both competent and effective. However, she was not the lawyer of consequence in this case. Mr. Ali retained counsel to seek a second opinion.  Mr. Crowley was the lawyer whose effectiveness matters as he was the lawyer who was representing Mr. Ali when the new plea offer was made, and when Mr. Ali made his fateful decision to proceed to trial. He was the lawyer who was of record when Mr. Ali needed competent advice about the strength of the government's case and the plea offer.

## CONCLUSION

Mr. Ali was not in a position to make a "reasonably informed decision whether to accept" the plea offer. He was not being advised by a lawyer who himself had reviewed the discovery that made up the government's case at the time the lawyer met with Mr. Ali to discuss the plea offer. Mr. Ali also had not had the opportunity to review and discuss the discovery with his lawyer before the plea offer expired.  For these reasons, he was not afforded the effective

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 19

CAMIEL & CHANEY, P.S
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
PETER A. CAMIEL (206) 624-1551
CATHERINE A. CHANEY (206) 343-7642

1    assistance of counsel that the Sixth Amendment requires.  Therefore, this motion for new trial

2    should be granted.

3

4

5

6

7

8
             Dated this 20th of April, 2017.

9                                                         Respectfully submitted,

10                                                        /s/Peter A. Camiel
                                                          PETER CAMIEL,
11                                                        WSBA No. 12596
                                                          petercamiel@yahoo.com
12                                                        Attorney for Defendant

13

14

15

16

17

18   CERTIFICATE OF SERVICE

19   I hereby certify that on the 20th day of April, 2017 I did file the foregoing with the Clerk of the

20   Court using the CM/ECF system that will provide notification of such filing to all attorney of
     record.
21
                                                          /s/Peter A. Camiel
22

23

24

25

26

MOTION FOR NEW TRIAL PURSUANT TO F.R.CR.P 33 - 20