UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM ALI,<br><br>Defendant. | CR16-142 TSZ<br><br>ORDER |

THIS MATTER came before the Court on defendant William Ali's motion for new trial, docket no. 93. Mr. Ali's motion alleged that his trial attorney, John R. Crowley, was ineffective because he failed to adequately advise Mr. Ali about a plea offer and failed to obtain Mr. Ali's consent before rejecting it. The Court conducted a hearing on June 15, 2017, and granted the motion for the reasons stated on the record. The Court has considered the testimony of the witnesses at the hearing, the Stipulation Regarding Certain Facts, docket no. 104 ("Stipulation"), and all of the exhibits admitted at the hearing. This Order incorporates by reference the Court's oral ruling on June 15, 2017, docket no. 106, and provides the reasons for the Court's ruling.

ORDER - 1

Based on the testimony at the hearing on June 15, 2017, and the records and file in this case, the Court makes the following findings of fact and conclusions on law.

**FINDINGS OF FACT**

1. Mr. Ali was arrested on April 11, 2016, and has been in custody since his arrest.

2. On April 12, 2016, Nancy Tenney of the Federal Public Defender's office was appointed to represent Mr. Ali.

3. Mr. Ali was indicted on May 11, 2016, and charged with one count of conspiracy to violate the Arms Export Control Act and one count of attempted violation of the Arms Export Control Act. Indictment (docket no. 21).

4. By May 27, 2016, the Government had provided Ms. Tenney with a full set of discovery and had extended a plea offer. *See* Ex. 62 (email and proposed plea agreement). The proposed plea agreement required Mr. Ali to plead guilty to Count I alleging conspiracy in exchange for dismissal of Count II. This plea agreement did not impose any constraint on either party's sentencing recommendation, but the Government and Ms. Tenney discussed the "possibility of a 24-month recommendation." Stipulation at ¶ 3.

5. In June of 2016, Ms. Tenney sent Mr. Ali an "encrypted" compact disc containing discovery, but Mr. Ali was never able to access the discovery contained on the disc prior to trial. *See* Ex. 51 (Decl. of William Ali).

6. In mid-July 2016, Mr. Ali retained John Crowley as new counsel.

ORDER - 2

7. On August 12, 2016, Ms. Tenney notified the Court that the defendant had retained John Crowley. Ms. Tenney also requested a status conference because Mr. Crowley had not yet appeared in the case. Mr. Crowley filed a motion to substitute counsel on August 15, 2016, docket no. 36, which the Court granted on August 16, 2016, docket no. 37. Mr. Crowley testified at the hearing that the delay in formally appearing was the result of his waiting for a retainer to be paid in advance of his formal appearance.

8. On September 19, 2016, the Government sent Mr. Crowley an email with a plea offer proposing a plea to Count I (having a five-year statutory maximum) and a 24-month cap on the Government's sentencing recommendation. Mr. Crowley did not respond despite repeated follow-up messages and emails from the Government to Mr. Crowley's office about the status of the new plea offer.

9. On October 23, 2016, the Government informed Mr. Crowley it intended to request a status conference in light of Crowley's failure to respond to the new plea offer. That same day, Mr. Crowley called the Government and indicated that he would call back later in the day to discuss the case. The Government then re-conveyed the plea offer sent on September 19, 2016, to Mr. Crowley by email, and requested that Mr. Crowley call back that afternoon. Mr. Crowley did not call back that day, and thereafter, the Government again left multiple messages about the status of the case, none of which were returned.

10. On October 26, 2016, Assistant United States Attorney Thomas Woods sent Mr. Crowley another email reiterating the plea offer with a government recommendation of 24 months and estimating a 63-78 month guideline range if

ORDER - 3

Mr. Ali was convicted at trial. In this same email, Mr. Woods communicated a plea offer deadline of November 2, 2016.

11. On October 27, 2016, having not heard from Mr. Crowley about the plea offer, Mr. Woods emailed Mr. Crowley asking him to confirm that he would respond one way or the other by Wednesday, November 2, 2016. Stipulation at ¶ 8.

12. On November 2, 2016, the Government advised Mr. Crowley that it would ask the Court to conduct an ex parte inquiry with Mr. Ali to determine whether the plea offer had been conveyed to Ali during the status conference which had previously been set for November 16, 2016. Stipulation at ¶ 10. Mr. Woods sent this email because of his concern that Mr. Crowley had not conveyed the plea offer to Mr. Ali.

13. On November 10, 2016, Mr. Woods met with Mr. Crowley and outlined the plea offer; Mr. Crowley indicated that he would meet with Mr. Ali over that weekend to discuss the plea. *Id.* at ¶ 11.

14. On November 14, 2016, the Government sent Mr. Crowley another email indicating that the plea offer would expire that day unless he heard from Mr. Crowley. *Id.* at ¶ 12. Later that day, Mr. Crowley requested an extension of the plea offer deadline until the morning of November 16, 2016. *Id.* at ¶ 13.

15. Mr. Crowley met with Mr. Ali at the Federal Detention Center ("FDC") on November 15, 2016. Mr. Crowley spoke with Mr. Ali about a plea offer but did not tell Mr. Ali about the Government's recommendation of no more than a 24-month sentence.

16. At the hearing on June 15, 2017, the following questions were asked of Mr. Crowley and he responded as follows:

> THE COURT: Mr. Crowley, had the government offered you a plea – a deal where they would recommend no greater than 24 months?
>
> THE WITNESS: Yeah. Oh, yes, they did.
>
> THE COURT: Okay. And did you disclose that to Mr. Ali?
>
> THE WITNESS: We spoke about an offer on three different occasions, actually. And –
>
> THE COURT: Did you tell Mr. Ali that the government had offered a plea arrangement that would include a government recommendation of 24 months?
>
> THE WITNESS: I don't believe we got that far in the conversation. He did not want to talk about a deal.
>
> THE COURT: So the answer would be, "no," you never told Mr. Ali that the government had offered 24 months' recommendation?
>
> THE WITNESS: I believe that's true.
>
> THE COURT: All right. And that's true. And nevertheless, on the morning of November 16, you rejected the plea agreement.
>
> Is that where we are?
>
> THE WITNESS: Well, yes, he rejected the plea. He did not want to talk about a settlement.

*See* Transcript (June 15, 2017) at 23:4-24:1 (docket no. 110).

17. As of November 15, 2016, Mr. Crowley was not in possession of all the Government's discovery materials because he had not requested those materials from either the Government or Ms. Tenney.

18. On November 16, 2016, in advance of the status conference scheduled that afternoon, Mr. Crowley left Mr. Woods a voicemail message indicating that Mr. Ali had

ORDER - 5

1  rejected the plea offer.  As of that time, Mr. Crowley had never told Mr. Ali about the 24-
2  month recommendation, or the likely guideline range of 63-78 months if convicted after a
3  trial.  Mr. Ali never authorized Mr. Crowley to reject the plea offer.

4     19.    After leaving the voicemail rejecting the plea, Mr. Crowley requested
5  examples of the most "damning emails" for the purpose of showing them to Mr. Ali.  At
6  the November 16, 2016, status conference later that day, Mr. Woods gave Mr. Crowley
7  "a few of Mr. Ali's emails that had previously been produced in discovery, including the
8  July 12, 2015, email."  <u>See</u> Stipulation at ¶ 18.  Those emails had been produced to
9  Mr. Ali's former attorney but never seen by Mr. Crowley until the hearing.
10 Mr. Crowley's testimony that he had seen those emails before that day (<u>see</u> Tr. at p. 20)
11 was not credible.  The Court finds that Mr. Ali did not learn about the Government's plea
12 offer and the offer of a 24-month recommendation until the status conference on the
13 afternoon of November 16, 2016, after the plea had already been rejected.

14     20.    At the conclusion of the status conference on November 16, 2016, the
15 Government agreed to keep the plea offer open for several days to allow Mr. Crowley to
16 meet with Mr. Ali over the following weekend to discuss the offer.  At that time,
17 Mr. Crowley indicated to Mr. Woods that he would visit Mr. Ali and discuss the plea
18 offer with him that weekend.

19     21.    On November 21, 2016, Mr. Ali wrote to the Court seeking assistance
20 because he was having difficulty getting responses from his lawyer and had only been
21 able to review a very limited set of discovery material.  <u>See</u> Ex. 56.

22

23

22. On November 21, 2016, Mr. Woods emailed Mr. Crowley asking him about whether he had met with Mr. Ali to discuss the plea and indicating that on November 22, 2016, "the plea offer would expire."

23. On November 22, 2016, Mr. Woods and Mr. Crowley had a phone conversation, in which Mr. Crowley told Mr. Woods that Mr. Ali planned to proceed to trial. Mr. Woods asked Mr. Crowley whether Mr. Crowley had met with Mr. Ali to discuss the offer after the November 16, 2016, status conference. Stipulation at ¶ 21. Mr. Crowley did not respond.

24. Mr. Ali was never told about the Government's extension of the plea offer, and never authorized Mr. Crowley to reject the plea.

25. Mr. Ali never had the opportunity to reconsider the plea offer because Mr. Crowley never met with Mr. Ali between the November 16, 2016, status conference when the offer was extended, and November 22, 2016, when Mr. Crowley again rejected the plea offer.

26. Mr. Crowley never provided a recommendation to Mr. Ali about whether to accept the plea offer.

27. On December 2, 2016, Mr. Crowley, for the first time, requested discovery materials from the Government, *id.* at ¶ 23, and Ms. Tenney. Some discovery was logged in to Mr. Crowley's office as late as December 9, 2016, just days before trial commenced on December 12, 2016. *See* Ex. 52.

28. Mr. Ali proceeded to trial on December 12, 2016, and the jury found Mr. Ali guilty of one count of Conspiracy to Violate the Arms Export Control Act and

ORDER - 7

one count of Attempted Violation of the Arms Export Control Act in violation of 22 U.S.C. § 2278.  Verdict (docket no. 78).

29. Mr. Crowley testified at the hearing on June 15, 2017, that he had been in possession of key discovery materials since August and had reviewed this discovery with Mr. Ali.[1]  The Court finds this testimony not credible.  Mr. Crowley could not recall from whom he had received discovery and the Court finds that Mr. Crowley did not obtain complete discovery materials relating to the case until December 2, 2016.  Mr. Ali's November 21, 2016, letter to the Court explicitly outlines Mr. Ali's concern that he had only had the opportunity to review a very limited set of discovery with his attorney.  *See* Ex. 56.  Further, Mr. Crowley was unable to offer a cogent explanation for why, if he had been in possession of key discovery materials in August, he needed to ask the Government to provide him with "damning emails" prior to the November 16, 2016, status conference.

30. Mr. Crowley testified that he visited Mr. Ali on November 19, 2016—prior to the final rejection of the plea.  The Court finds this testimony not credible. Mr. Crowley did not visit or talk to Mr. Ali on November 19, 2016.  The Federal Detention Center visitation logs do not reflect that Mr. Crowley visited Mr. Ali on November 19, 2016.  Mr. Ali's emails to his wife on November 19, 2016, at 5:20 p.m. and November 20, 2016, at 7:06 p.m., corroborate Mr. Ali's testimony that he had not seen Mr. Crowley since the November 16, 2016, status conference.  *See* Ex. 58.  Just two

---

[1] Mr. Crowley acknowledged at the hearing that he had never reviewed with Mr. Ali at any time the audio and video recordings produced in discovery.

days after Mr. Crowley purportedly met with Mr. Ali, Mr. Ali wrote a letter to the Court dated November 21, 2016, specifically complaining about his lack of contact with Mr. Crowley.  *See* Ex. 56.

31. During his testimony, Mr. Crowley was unable to remember any specific information about his purported November 19 visit with Mr. Ali, including what he said to Mr. Ali.  Mr. Crowley's testimony that he met with Mr. Ali on November 19, 2016, was based entirely on his review of his Outlook calendar "notes."  Mr. Crowley acknowledged that it was "certainly possible" that these notes might reflect a meeting that never happened because his office does not delete calendar entries if the meetings they document are cancelled or otherwise do not occur.

32. Mr. Crowley failed to explain the applicable sentencing guidelines, and failed to advise Mr. Ali of the reduced sentencing exposure afforded by the Government's commitment to dismiss Count II.  Count II charged an attempted violation of the Arms Export Control Act and carries a maximum sentence of 20 years, 22 U.S.C. § 2278(c), while a conviction for conspiracy (Count I) has a five-year statutory maximum, 18 U.S.C. § 371.

33. As a result of the misconduct of Mr. Crowley, Mr. Ali is entitled to accept the plea offer by the Government that was extended after the in-court status conference on November 16, 2016.

34. There is a reasonable probability that Mr. Ali would have accepted such plea offer prior to trial.

35. On June 16, 2017, Mr. Ali advised the Court he intended to plead guilty to Count I with the Government recommendation of a 24-month maximum, thereby accepting the same plea offer that Mr. Crowley rejected without his client's knowledge and consent.

## CONCLUSIONS OF LAW

1. Mr. Crowley provided ineffective counsel in this case before trial as follows:

   A. Mr. Crowley never told Mr. Ali about the plea offer with the 24-month recommendation before Mr. Crowley rejected the offer by voicemail on the morning of November 16, 2016. (*See* Findings of Fact at ¶ 18);

   B. Mr. Ali never authorized Mr. Crowley to reject the offer on November 16, 2016;

   C. Mr. Crowley never met with Mr. Ali after the November 16, 2016, status conference and before Mr. Crowley's telephone call with Government counsel on November 22, 2016, when Mr. Crowley advised the Government that Mr. Ali planned to proceed to trial. (*See* Findings of Fact at ¶ 25);

   D. Mr. Crowley did not receive all the discovery materials in this case until on or about December 2, 2016.

   E. Mr. Crowley's testimony at the hearing on June 15, 2017, was not credible concerning a visit with Mr. Ali on November 19, 2016. (*See* Findings of Fact at ¶ 30);

2. A defendant has a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). During plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *Id.* To demonstrate that he was afforded ineffective assistance of counsel, a defendant must meet the "performance prong" of the *Strickland* test by showing that his counsel's representation falls "below an objective standard of reasonableness." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

3. In the plea-bargaining context, although the ultimate decision of whether to go to trial is reserved to the defendant, defense counsel has "a clear obligation to fully inform [the] client of the available options." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). A criminal defendant has a right to expect, *at least,* "that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* at 553. Knowledge of the comparative sentence exposure is crucial to the decision of whether to plead guilty. *See United States v. Arredondo-Meza*, 213 F. Supp. 3d 1311, 1322-23 (D. Idaho 2016) (quoting *United States v. Day*, 969 F.2d 39, 44 (3d Cir. 1992)).

4. Mr. Crowley's failure to obtain Mr. Ali's consent to reject the offer on November, 16, 2016, and again on November 22, 2016, fell below an objective standard of reasonableness under prevailing professional standards. *See United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994).

5.  Mr. Ali must also show that "but for counsel's unprofessional errors, the result would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In this case, Mr. Ali has shown that there was a reasonable probability that, but for his attorney's deficient performance he would have accepted the government's offer.  A new trial does not remedy this harm.  Rather, requiring the government to reinstate its plea offer is appropriate.  *Blaylock*, 20 F.3d at 1458.

6.  If Mr. Ali pleads guilty and the Court accepts the plea, the Court will vacate the conviction and sentence Mr. Ali pursuant to the plea agreement.  *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

For the foregoing reasons, the Court granted the motion for new trial.

IT IS SO ORDERED.

Dated this 18th day of July, 2017.

Thomas S. Zilly
United States District Judge